and Robert Landrella, appellants, and Linda Kowalski. Ms. Kowalski? May it please the Court and Council, Melinda Kollross on behalf of the Board of Trustees of the Lockport Township Fire Protection District Firefighters' Pension Fund and Pension Board President Robert Landrella. There are two questions currently before this Court. The first is whether the Board's finding that Mr. Cronholm re-entered active service while employed as the Chief Administrator of the District from November 1, 2009 to March 18, 2010 was clearly erroneous. And if that finding was not clearly erroneous, whether the Board was authorized to recoup the benefits paid to Mr. Cronholm during his period of ineligibility. Turning to the reentry issue, this Court ordered a remand to the Board in order to conduct an evidentiary hearing to assess what Mr. Cronholm's pension status was. The Board conducted the evidentiary hearing, which spanned over four days and generated an 1,100-page administrative record, which included 50-plus exhibits and also testimony from Mr. Cronholm himself and then-Fire Chief David Skorje, who had been the Assistant Chief during Mr. Cronholm's tenure. The Board, following the evidentiary hearings and consideration of all the materials submitted, issued a 17-page decision finding that indeed there was a reentry into active service for the five-month period in question. And so the job of this Court is to look at the factual record before the Board and to determine whether the Board's decision is clearly erroneous. And we submit it is not because there is more than sufficient factual evidence justifying the Board's conclusion that there was a reentry. The first and most significant, but by no means the only evidence, is the Department of Insurance's advisory opinions on the matter. Now, we have to remember that the Department of Insurance is authorized and charged with interpreting the pension code provisions at issue here and to give advice to entities such as the Pension Board on what its opinions are concerning certain actions and activities. The Department of Insurance, in this case, reviewed the job description of Fire Chief that Mr. Cronholm held prior to his retirement and the job description for the Chief Administrator position, which was the role he was employed in during the period in question. And the Department of Insurance found that these were substantially the same position and therefore they would violate the statute. He would be reentering active service such that he would not be allowed to collect pension benefits under Section 4-1117 of the statute. Now, the Department of Insurance didn't just make that pronouncement in a vacuum. It gave a detailed analysis of why it was making that finding and talked about the considerations at issue. And what the Department of Insurance told the Board is we don't just look to see if it's a civilian position or sworn position and we don't just look to see if there's actual firefighting, physical firefighting duties performed on site by the person in question. Isn't that required to be the Fire Chief, that you be an active firefighter? No, it isn't. He had that when he was the Fire Chief. I know that they said that he did not go, but isn't there a difference between being able and having the right to go and not being able to go? It is not necessarily a requirement. In fact, the Department of Insurance cited a case from the Illinois Appellate Court First District, this case called Board of Trustees of the Lansing Police Pension Fund, in which case the Fire Chief in that case was a civilian. He was not sworn. What is the requirement for the Fire Chief? Was he and had he been somebody that went and had the ability to enter a fire as a firefighter prior to his retirement in November? I believe that prior to his retirement he was in a sworn position, but what the Department of Insurance tells the Board to look at is what are the activities that were actually performed, not the label of civilian versus sworn. And what the Department of Insurance did is they say, what were the activities and responsibilities? And the Department of Insurance says, if this man is performing, not whether he was authorized, but what is he actually doing? If he is performing the same activities in this Chief Administrator role that he was performing as the Fire Chief, there's going to be a reentry. And they also discuss other factors. Was a new person appointed as Fire Chief? In this instance, no. Is this man going to be acting as head of the fire department in order of rank? Are personnel going to be reporting to him? In this instance, yes. And that's really what the key is. It's not that they just looked at the job descriptions. It's what is the analysis that was performed. And this is the Department of Insurance's analysis based upon its experience, not just in this case with this man, but looking at these issues through the course of historically, which the department references, across a variety of positions. Because remember, this isn't necessarily just going to be about a fire chief. There's other fire department personnel that they're going to look at. Do they qualify as a firefighter? And then they're also relying on this first district case and saying, well, here's the analysis. We don't just look at civilian. That's not determinative. What do we need to look at? What are the duties performed prior to retirement? The duties performed as a, quote, civilian chief. Was the former position filled by another employee? In this instance, no, for the period in question. And what are the duties customarily performed by a fire chief in other departments? And then when we look at the record on administrative review, when we go beyond the advisory opinion of the Department of Insurance, we have a multitude of facts supporting the determination of the board. Mr. Kronholm, by his employment contract, was charged with being responsible for all fire department activities other than on-site fire suppression. He testified during the administrative proceedings that he performed those contract duties to the best of his ability. By district resolution number 2009-03, he was identified as the highest ranking member of all fire department personnel. By the district policies manual in their structure and organization, the chief administrator, the role Mr. Kronholm occupied, was designated as the highest ranking member of the fire department, quote, responsible for proper and efficient management, administration, supervision, and control of the daily operations of the district. He was identified again in section 303A of the district policy manual as heading the fire department and to whom all officers of the district shall report through the chain of command. So we have a lot of evidence here. We have correspondence between Mr. Kronholm and the board saying he's going to stay as the head, he is going to remain the leader of the fire department. He continues to carry the fire chief badge. He occupies the fire chief office. He authors and presents a series of monthly fire chief reports. And then we have the testimony from Assistant Chief Skorje saying, I didn't do anything different after November 1st. His quote is, no, nothing happened at November 1st. Nothing happened for me. He didn't receive a pay boost. He said, I can't recall if I had any additional duties. After this purported retirement and change in role from chief of fire department to chief administrator. Certainly there was no replacement, there was no official replacement appointing Mr. Skorje as fire chief until March 18th, the end of the period in question. So we have all of this evidence supporting the board's finding. Let me ask you one thing. For the pension board purposes, is it important whether someone re-enters, just in the back, I'm not case specific here, but if somebody retires from the fire department, let's say he's a deputy chief, and then he re-enters as a firefighter or a captain. It's a question of whether he's got the same job he had before or whether he can be considered to be in the active fire service. It doesn't have to be the same job. Certainly he could have re-entered active service without occupying the same role. Those are the facts here. So the Department of Insurance and the board said, well, it's essentially the same role. But it wouldn't need to be. It could have been two different positions as long as it qualified as a re-entry. And for pension purposes, let's say a firefighter is not unusual. He gets injured. But he continues to work at a desk role. Is he in the active fire service just because he's not going out putting water on fire? He's in active service and he gets the benefit of contributing and receiving the pension benefits. So this is actually a broader construction. This isn't to penalize persons. It's more inclusive. The position that Mr. Kronholm espouses is actually a very narrow construction of who's qualifying as a firefighter. And that's one of the key concerns that the Department of Insurance expressed. They said people who are doing these other jobs, they're not on scene fighting fires for whatever reason, whether it's a disability or just historically their role doesn't require that. They've been participating in this fund for decades and then receiving those pension benefits. And the Department of Insurance says if you adopt the position that Mr. Kronholm has espoused, you're going to cut these people out of the pension. So it's this interpretation that the board has followed based on what the Department of Insurance said is construing it broadly of who's going to qualify as a firefighter. And really that's for purposes in most situations of receiving the benefits of the pension fund. Now in this situation it's going to preclude. Is the pension system in agreement with this? Because in other pension systems and cases we've heard recently, they said if you are not sworn, you are not considered for that pension system and that you have to go under the IMRF. Here it doesn't say that you need to be sworn. And in fact, they tried to enroll Mr. Kronholm in the IMRF and the IMRF reached the same conclusion of the Department of Insurance and the board here. They said he's performing fire protection duties. He should be under the firefighters pension code. He doesn't qualify for IMRF participation regardless of the fact that he wasn't sworn. So that's, and I neglected to mention that earlier, but that's another piece of evidence that was in front of the board that the IMRF not only rendered a decision, but took evidence as well and said he should be under the firefighters pension because he's performing firefighter protection duties even though he's not sworn and he's not doing the onsite firefighting. So yes, there is some evidence where they say he wasn't overseeing daily operations, he wasn't responding to fire calls, he wasn't doing investigations, and he wasn't sworn. But number one, the Department of Insurance says you don't need to have that. The first district case they relied on in their initial opinion says you don't need to have that. And here all you have to say was what the board decided reasonably supported by the facts and reasonably supported by an analysis of the statute and reasonable reliance on the Department of Insurance. And I submit that the answer to all those questions are yes. It's not the fact that you couldn't go the other way, but here the board looked and said we're going to follow what the Department of Insurance assessed because they're the body charged with analyzing, they performed a reasonable analysis, and are those findings arbitrary and capricious? No. So under Illinois Supreme Court authority, we're not going to just disregard those. And those findings aren't binding on this court. What the Department of Insurance did isn't binding, but if it's reasonable, it should be given substantial weight. It should be considered compelling authority. And again, Mr. Kronholm, in his brief, he ignores all of that other documentary evidence. He doesn't talk about the board resolution, the employment contract, what Mr. Kronholm was supposed to be doing under the district policy manual, the chain of reporting. Mr. Kronholm gave some very self-serving testimony at the hearing, saying I performed this very limited role. Really it was all Mr. Skorje, even though Mr. Skorje does not support that testimony. And the board was entitled, it hurt the board. It hurt the testimony. It judged the credibility of the witnesses. It was not required, it could have, but it was not required to disregard all the documentary evidence, the Department of Insurance's ruling, the IMRF's ruling, and just by Mr. Kronholm's version of events. And that's really what you would need to find in order to rule, as the trial court did on administrative review, that the decision of the board was clearly erroneous. And because my time is limited, I would just briefly like to address the recoupment issue. This court remanded the case almost two years ago for an evidentiary hearing to decide Mr. Kronholm's pension status. I submit that it did so so that if there was an overpayment during a period of ineligibility, which was what the whole Randage lawsuit was about, that the board could take action to recoup those funds. Otherwise there would have been no reason to send this back and have these years of additional proceedings. And I submit that that finding is supported by the board of trustees' role as fiduciaries of the fund, specifically charged with controlling and managing payments to retired firefighters. If controlling and managing would certainly seem to encompass if an error has been made, recouping those funds. And the Fields case that we've cited in our brief is very analogous. Five months of inaccurate overpayments. The board in that case ordered repayment, just as the board did here. And I submit that that is a correct interpretation. Otherwise there would be no reason for this case to go back and all of these proceedings to be held if we were to find that the board has no authority to do anything once an overpayment has been made. Thank you, Your Honors. Thank you, Ms. Thomas. Mr. Roger. My name is Tom Roger. I represent the plaintiff appellee, Robert Kronholm, in this case. A couple of things by way of background. It's important to keep in mind, Mr. Kronholm was in receipt of a pension benefit. So when the board had its initial hearing to determine this case, it's really the board's burden of proof to establish that he reentered service. And based on the four days of evidentiary hearings and the voluminous records that were presented at that hearing, the board simply failed to meet its burden. The only factual evidence that the board relied upon was that Mr. Kronholm kept his chief badge and that he kept his office. That was the only facts that came on this record at the four days of administrative hearing that they relied upon. They ignored a significant amount of facts, which clearly established that Mr. Kronholm went from being the chief of the district, where he oversaw fire suppression tasks, to becoming strictly an administrator in a civilian capacity. This was a district that was growing, and they needed to restructure. They went from three firehouses to six. They were going to take on an additional employee, regardless of who that was. And the district felt that Mr. Kronholm was in the best position to fill that administrator position. He had been doing it for some 30-odd years. There was nothing nefarious about the way the district went about doing this. They structured a job description, which clearly said Mr. Kronholm, who was doing fire suppression tasks, now no longer is. And the appellants make light of it, like that was just some menial task that Mr. Kronholm did on a day-to-day basis. When, in fact, firefighter suppression duties is a significant part of his job duties while he was chief. When he became administrator in a civilian capacity, after he retired, he no longer had the benefits of any pension disability benefits or things of that nature while he performed his administrative tasks as the chief administrator. My question earlier, so an injured firefighter who's on light duty maybe for a year because he's got an injury, but he's doing something, but he's not going out throwing water on fire. Is he in the fire service? He is. And the reason being, Justice, is because his job duties still entail fire suppression duties. Now he may temporarily, because he's in a light duty capacity, not be able to perform those duties, but his job duties still legally entail those particular functions. Light duty is really an exception to the rule, and that only applies for a duty-related injury, mind you. So if the district is going to accommodate somebody in a light duty capacity in some administrative fashion, that's on a temporary basis, and it's only because it's a duty-related thing and it falls under the Workers' Compensation Act. But in Illinois, I am unaware, and I've been representing police and firefighters for quite a long time, of any departments that have light duty positions in the fire service. It's either you perform full unrestricted duties or you don't perform any duties for the fire department. Well, in the fire department, I'm a little bit familiar with them, and there's not every firefighter, member of that fire department, can man the hose every time it fires every day. And there are other duties that, you know, support duties that are required that aren't directly involved in fire suppression. And so if they take a guy and they say, gee, a poor old Fred here is hurt, and he's just not going to be able to do this, but instead of where we normally rotated guys through these positions up here, you're going to do the support roles along here, we'll just put Fred on that permanently. That way he stays on the department as a firefighter, that support role is being done, we're just not rotating these in the real world. I don't think that's an unusual situation. In that situation, Your Honor, as you described, the firefighter would certainly meet the definition of firefighter in Section 106, 4-106. In this case, Mr. Cromwell doesn't meet that definition for two reasons. The firefighter in your scenario, he's still a sworn and commissioned firefighter, albeit not being assigned fire suppression tasks during that moment while he has whatever particular injury he has. And he's also, part of his job duties, legally, he still has the duties of responding to fire suppression duties at the scene of such fires. Maybe an older guy that doesn't, has a back issue and is still working in a foreign restricted capacity, maybe he's not manning the hose, but he's still going out to the scene and performing in some capacity, whether it's he's driving the engine or whatnot. He still meets the definition of firefighter. Well, some of those guys may never leave the central house because there's stuff going on back there too. They may not, but then you get into, is it part of their job duties as a firefighter, do they meet that definition, and are they just being assigned a different function in the department? And I think that's where the distinction here lies, and I think where the Department of Insurance got it wrong three years prior to any hearings, where they simply analyzed the two different job descriptions. The Department of Insurance, keep in mind, didn't have the benefit of the four days of hearings and all the evidence that Your Honor received. It's interesting here because the board, back in 2010, when they initially decided this case, they said he did not reenter active service. They had those two Department of Insurance opinions. Then they conduct hearings after remand. They get all the evidence, and then they say, well, now we're going to rely upon those Department of Insurance opinions that didn't have all the evidence that the board had before them. And that's why the Department of Insurance opinions are arbitrary, capricious, and manifestly contrary to the statute. Because they didn't analyze, look, his job duties did change Mr. Kronholm's in this scenario. Active Chief Scori did testify in this matter, and he testified consistently with Mr. Kronholm. He said as of November 1st, he considered himself acting chief. That's at page 387 of the record. He also says he was the highest in the chain of command. He was in charge of all supervisory personnel and firefighters at any fire scene. And that's at page 403 of the record. He also said he was the ultimate authority in resolving grievances. He was the ultimate authority in staffing and equipment issues as of November 1st of 2009. And he was also the ultimate authority in personnel assignments. That's at page 404 and 405 of the record. So I think counsel misstates the record if she says, Chief Scori, there was no change in what Mr. Kronholm did. There was a distinct change, a clear change. It was acting Chief Scori is going to be the guy when it comes to fire suppression tasks in charge of the department and in charge of fire personnel. Mr. Kronholm is going to handle the day-to-day administrative functions of the department. And when you look at a pure statutory construction argument, which is what our argument was before the circuit court and same here, why we think this court should affirm the circuit court and reverse the decision of the pension fund, is when you read section 4-117, it's clear. You have to reenter active service as a firefighter. And when you look at the definition of firefighter, it's very clear. Your duties must include those of a firefighter as classified by the civil service, which clearly Mr. Kronholm's duties did not qualify here. He was not sworn once he retired. And even Chief Scori testified, yeah, once he retired, he was civilian. He had no legal authority to go to fires. So that takes out a significant portion of his legal ability to operate the fire department. Sure, they may have to report to him by the municipality's policies, but that doesn't make him a civil service rank and the highest ranking member when it comes to fire suppression tasks. Secondly, the statute is very clear as to what constitutes a firefighter in its second portion. It says civil service rank of a firefighter at the very least and your duty is to participate or work in controlling and extinguishing fires at the location of any such fires. That's in the statute. That's significant. That's glossed over by the Department of Insurance in their initial opinions three years prior to the hearings. And it's glossed over by the appellants in this matter. So in a city like Chicago, where I'm guessing the fire chief virtually never sees a fire, in reality, that fire chief isn't going to make fires, if any, unless there's one on the news. And does that take him out of the rank of a firefighter? Does that mean he's not a real firefighter? No, and I would first say as a caveat, the city of Chicago falls under a different section of the pension code, Article V. I don't know if they have a similar grant provision. Let's go down to Peoria. How many fires do you think the fire chief of Peoria sees? It's a great question, Justice, but it's not how many do they see or how many do they respond to in a year. It's do they have the legal ability to do that? Are they sworn as a firefighter? Is it part of their job duties by the municipality to go to those fires? And here, Mr. Crumholm's job duties, once he became minister, it was clearly spelled out in his job description. He does not have the legal authority to do fire suppression tasks. So if you could answer the question more specifically. By writing something out of his job description that he never did in reality to begin with, is that the way you get around the pension issue? Well, I would say this, Your Honor. He was responding to calls, and even Acting Chief Skorey testified that he would respond to major box alarms in the department. So he was certainly an active chief that would go to any major calls. Certainly most fire chiefs, I would agree with you, probably don't go to all the calls that come out or even the minor calls. But the record here clearly established that Mr. Crumholm, as chief, would go out to the major box alarms. He had the most experience on the department 30 years before he retired. I mean, he wanted to be, and I find that most fire chiefs, even as they progress in their years on the department, they still want to be active. They still have the know-how, the expertise to direct subordinates. And in this case, Mr. Crumholm didn't have that authority. Acting Chief Skorey acknowledged that during the hearing, both that Mr. Crumholm, as chief, would go out on calls, major box alarms, as he recalled. And he also said after he became administrator, he didn't have the authority to go out on calls, and he didn't go out on any calls. So that's the difference here. Under your example, could a department try to skirt the issue and get around the penalty? I don't think they could because legally that fire chief, even if he didn't respond to any calls throughout the year, he still would have the legal ability to do so. And if they didn't write it out of the job description, and he was civilian and somehow still responded to calls, I think it would present a problem. I think he would clearly then meet the definition of firefighter, and he'd be considered under 4117 to have reentered active service. But the facts here don't bear that out. In Appellant's brief, they indicate that Chief Skorey never considered himself active chief. That's simply contrary to the record. At C387 of the record, Chief Skorey indicates that he was acting chief right around the date. He couldn't remember the exact date. I asked him if it was November 1st of 2009 when Mr. Kromholm retired and he became acting chief, and he said it was around that date. He couldn't be sure. So clearly there was a change in the structure of the department. This wasn't just the end title only, as the appellant would suggest here. There was a significant change. The department was changing over. And I submit to you that the Department of Insurance opinions are simply as good as you get out what you give in. When these opinions were asked back in 2009, all the examiner at the Department of Insurance had was two job descriptions. Thank you. The Department of Insurance examiner didn't have the benefit of the four days of hearing and the testimony of Mr. Kromholm and the testimony of acting chief Skorey where they said, here's how things change. Here's the jobs that I did as chief. I no longer did fire suppression duties, which included assignment of personnel and things of that nature. The Department of Insurance didn't have all that information. They based it simply on two written documents that they reviewed. And I think, quite frankly, they got it wrong when you look at a strict, plain, ordinary application of the statutes in this case. So what if you take a department that's growing and they've got a fire chief and all of a sudden they're growing and, well, you know what, we're going to add, we're going to promote one of these captains or somebody to assistant. So now we're going to have a new assistant chief. And he's going to take over some of the duties that the chief used to do, free the chief up to do other stuff, change the chief's status. Depends on what those duties are. If in this case the person they promote is still a sworn firefighter and is still responsible as part of his job duties to go to the scene of fires at the location of such fires as defined by the statute, then he's in service as a firefighter and he's entitled to the benefits of the statute. If the guy retires, as has happened here, and he's a non-sworn and they take away any fire suppression duties, a strict reading of the statute, he's no longer entitled to Article IV benefits. Now keep in mind, once Mr. Crownholm retired and went and became a civilian, he didn't get the benefits of Article IV. So that's why they take out fire suppression tasks. If he were to show up at a fire scene and get injured, he's not getting disability benefits because he's a civilian. The business about IMRF, they claim he just got it wrong. They're a separate pension fund, a separate entity that really, their opinion has no bearing on this case whatsoever. They're interpreting a different statute and they can get it wrong as well. I think he had every right to be an IMRF and he certainly should have been an IMRF as a civilian employee who wasn't performing fire suppression tasks. The fact that it shouldn't be part of this case, it's really a red herring because he should have been in that thing. Their decision has no legal bearing whatsoever on interpreting Article IV of the pension code. So we'd ask that for those reasons, ask any other questions from the panel. I do actually just have one question. The difference between what the Department of Revenue issued in November and then in March, they said in the first letter, based on the information we have and these being substantially similar, we would say it's re-entry. So then in response to that, is it a clarification? Is that to your standard that what is the revision or whatever really clarifies or expands on what, I guess, not what his duties are, but what they are not? To demonstrate, hey, these are not substantially the same. These are much different. He's not sworn. He's not a firefighter. It's not your opinion that three months is before they changed the policy or his contract. You're just saying that we just wrote these out. We just explained them better. I think that's exactly it, Justice. Really, the only difference between the first opinion where the Department of Insurance said, yes, he's re-entered active service, and the second opinion, which was three or so months later, they said, no, he didn't re-enter active service, was that they indicated that we are hiring a new fire chief. As far as I could tell, that's the only fact that changed. They still only had the two job descriptions. However, now the district forwarded on to the Department of Insurance a structure of how the department will look and that there will be hiring a new fire chief. And that was what changed their mind. I submit to the panel that really it shouldn't have made any difference. I think their initial opinion was wrong, that they should have found that he had re-entered active service based on a strict reading of the statute. And simply hiring a chief, and as I indicated in my brief, what that really does is from the analysis standpoint is say, okay, if they're hiring a new chief, he's taking on those job duties that were previously Mr. Crownholme's. And at that time, as I mentioned, the Department of Insurance didn't have the benefit of these four days of hearing. And what the four days of hearing established was, yeah, although there was an acting chief and they really didn't put in a new fire chief at that point, or they didn't make Mr. Scori the official chief by way of ordinance, he was the acting chief. He acknowledged he was the acting chief. He acknowledged that his job duties changed. The only difference that the pension board cites in their decision is that he kept his badge, which, by the way, was mounted on a wall. It wasn't like he was, you know, trouncing around the department with a badge on his chest and wearing a uniform. He was in civilian clothes. He didn't have an emergency response vehicle. And he kept his office. Well, Chief Scori, acting Chief Scori, had his own office. So that's really just a matter of practicality. Where you stay in his office, they stay in his office. So from a firefighter duty standpoint, that made no difference. So the fact that the pension fund chose to ignore all the evidence that was presented, which really confirmed the second IDOI opinion, wherein the duties did change for Mr. Kronholm. This wasn't an in-name only. It was a significant change. He wasn't the highest in fire suppression, no longer. And acting Chief Scori did those duties. So based on that, I know my time is up. I would ask that you affirm the decision of the circuit court and that you reverse the decision of the pension board and find that Mr. Kronholm had not reentered active service as a result of being the administrator. Thank you. Call Ross for reply. What you just heard is not an accurate reflection of the record. That resolution specifically identifies Chief Administrator Kronholm as the highest-ranking member of the fire department. He is listed above the assistant chief, who is Mr. Scori. These weren't acts that were done in some remote time period. Two weeks before the retirement, the purported retirement, the district and Mr. Kronholm entered into an employment contract, which specifically stated that Mr. Kronholm was going to keep all administrative responsibilities. He was going to direct all of the operations of the fire department. It says, other than on-site fire suppression, he is responsible for planning, directing, coordinating, controlling, staffing all activities of the fire department. For the completion of ordering such reports as may be required by competent authority, for relations with citizens of the district, responsible for the enforcement of all ordinances pertaining to the district. And it is that exact analysis that the Department of Insurance said, this is what we look at to determine whether he's a firefighter or not. The Department of Insurance specifically said the fact that you don't go out to the fire scene and engage in physical firefighting is not the determining issue. If you are administratively responsible for directing those activities as a fire chief in so many different districts and so many different departments, you're a firefighter. You get the benefit of the pension, but you also face the situation here. Let's just follow up. I'm going to ask you a question. Let's say, for instance, that they had this job description and they hired Justice Schmidt. He had never been a firefighter. So under your analogy, he's never been a sworn firefighter. He now is a firefighter without ever having been sworn, ever being allowed to go out to the fire. You're saying now he would be allowed to have a pension as an administrator. I am. He could be if he was performing all of these other activities that the Department of Insurance identified as what the roles are. What about the statute? The statute doesn't require it. Nowhere does it say he's got to be sworn. It does not say he's got to be sworn member. See, that's where some of the hang-up is here. It doesn't say he's got to be sworn. And that's where that case that the Department of Insurance relied on, the first district case, said, you don't go by the label civilian or sworn. You look at what are the actions that they're doing. So an individual in that instance would be covered under workers' comp if they went to the scene of a fire and they were injured? He wouldn't be going to the scene of a fire. See, that's the distinction. But doesn't the statute require in order for you to be an active-duty firefighter, the statute says that you have to be able to go out and be at a fire in that location? It doesn't say you have to be there. It says that your duties include, and what the Department of Insurance said, is if you're the fire chief and you're implementing plans for how you fight a fire, if you're doing them sitting at your desk, you're engaging in firefighter activities. But I'm not asking what the Department of Insurance said. I'm asking what the legislature has said in their statute. And I don't think that it matters that the Department of Insurance says you don't have to be able to go out to a fire. Because I think the statute says you do. They're the body charged with interpreting that statute, so their interpretation should be given substantial weight. And in the case, the first district case, it was a civilian fire chief who had these type of duties. And they said you don't just look at whether they're civilian or sworn, you look at what they're doing. If they hired a civilian fire chief right now and he drew on a blackboard and said, this is the way you fight fires at the scene, but he never goes to the scene, he's going to be a firefighter and he's qualified for that pension. And let's call it what it is here. This retirement was done so that Mr. Kronholm could collect his retirement benefits and also collect the salary as the chief administrator. His contract said he's going to be the leader of the district. The district's policy manual said he's the leader of the district. The resolution that the district passed said he's the leader of the district above Mr. Scorie. He's the head. He's in the chain of command. Everybody reports up to him. And when the Department of Insurance, when they then changed that description and said, no, we're hiring the new fire chief, it's going to be Scorie, you're not going to report to Mr. Kronholm anymore, that's when they said there wasn't a reentry into active service. But every piece of documentary evidence in front of the board at the time of its hearing said Mr. Kronholm is the leader of the district, he's the chief, he's the head ranking official, and all those sites are in our brief. He was above Mr. Scorie. So these representations that Mr. Scorie was calling the shots and Kronholm wasn't above him, those are inaccurate. Those are contradicted by the written submissions, the district's policy manual, the district's resolution, and the employment contract that Mr. Kronholm and the district entered into two weeks before his retirement said he's in charge. He's doing all of these things. He's just not going to go on to the scene of the fire, and he doesn't have to go to the scene of the fire. Your question, Justice Schmidt, if you're sitting at your desk and you say, I want 12 firefighters at the scene of this fire, you're directing, you're performing firefighter duties, you're directing those firefighting activities, even if you haven't gone down to the scene and said, we need 12 firefighters on scene. If he's doing it at his office, he's doing it at his desk, he's a firefighter covered by the pension fund. Thank you, Your Honors. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible.